DAVID S. PALMER, Mayor and Local Liquor Control Commissioner of the City of Danville, Plaintiff-Appellant, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellees.

Fourth District   No. 15458

Opinion filed October 26, 1979.

CRAVEN, J., dissenting.

Sebat, Swanson, Banks, Lessen & Garman, of Danville (Ralph J. Swanson, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield (Donald Townsend, Assistant Attorney General, of counsel), and Walker, Gende, Hatcher, Doyle, & Giamanco, of Danville (Pamela Howell and Richard Doyle, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

On February 23, 1978, defendant Security Venture Corp. (Venture) filed with plaintiff David S. Palmer, mayor of the city of Danville, an application for a class "P" liquor license to operate a package liquor store at 2807 N. Vermilion St. Those premises, although within the city, were also within Newell Township. On March 21, 1978, the mayor denied the application. On April 5, 1978, Venture appealed to the Illinois Liquor Control Commission (Commission), which after an evidentiary hearing, reversed the mayor and ordered the license to issue. The mayor appealed to the circuit court of Vermilion County which affirmed the Commission. The mayor then appealed to this court. We also affirm.

The mayor asserts that the Commission erred in (1) substituting its discretion for his, (2) concluding that Newell Township was wet, and (3) disregarding the nature of the area of the proposed location of the liquor store.

The city of Danville had made no provision for a record to be kept of the proceedings before its mayor as local liquor commissioner and no such records were kept. However, upon denial of Venture's application, the mayor wrote a letter to the parties stating these three reasons for his ruling:

> (1) In 1937, Newell Township, except the portion then in the city of Danville, had, by a majority vote of its people, validly elected to be dry. The area in question was then outside the city.
>
> (2) A liquor license at this location would increase the already dangerous traffic hazards on Route 1.

(3) The area does not lend itself to a liquor store location.

Only three witnesses testified at the subsequent hearing before the Commission: Mayor Palmer; Robert Fox, incumbent Newell Township supervisor; and John Smith, a long-time Newell Township resident. The major factual issue before the Commission was whether Newell Township had been voted to be dry. Although a dry referendum had been conducted in 1937, official records of the vote were not produced.

Mayor Palmer stated Venture's proposed site was within a commercial strip containing a K-Mart, a gas station, eating establishments, some industry, and grocery stores. He further testified that there were no liquor establishments in the immediate vicinity, and according to engineers and State highway officials the area was the most hazardous place in Danville since the entrance went onto a four-lane highway without any traffic signals. The mayor stated that the area of Newell Township which had been annexed to the city of Danville since 1937 had three places which were licensed to dispense alcoholic beverages, two private clubs and a package liquor store. One of the private clubs was the American Legion Hall which was operating prior to the 1937 "dry" referendum and was expressly excluded from the 1937 proposed prohibition. The other private club was the Elks Club, located several miles north and east of the proposed site and in an open nonresidential area. The package liquor store was in the Zayre Shopping Center just north of the southern border of Newell Township. It was about three miles from Venture's proposed site. Mayor Palmer testified that he did not issue any of the original licenses, but he has renewed them.

During the mayor's testimony the city tried to offer into evidence 1937 newspaper articles to show that the area of Newell Township, where Venture now sought a liquor license, had voted to be dry. Venture objected and the city stated that it was only being introduced to show the mayor's objective belief that Newell was dry and that it was for this reason that he rejected Venture's application. Venture then stipulated that the mayor's rejection was based on his good-faith belief that the township was dry. After this stipulation the city did not make further attempts to introduce the articles into evidence, and they were not accepted into evidence.

Robert Fox testified that he had been the Newell Township Supervisor since 1963, that the township had no office and that township books given him by his predecessor were maintained by him and the township clerk. He stated that he had township records which included those for the year 1937 but that neither he nor the township clerk had been able to locate a record of the outcome of the election. He also stated that he did not know whether a bound book, in which the dry referendum vote should have been recorded, ever existed. Mr. Fox did not indicate

what kind of a search was made to locate the record, and the township clerk did not testify.

John Smith testified that he had (1) resided in Newell Township continuously since 1925, and (2) led the campaign to have the 1937 petition for Newell Township to be dry put on the ballot. Over continuing objection of Venture, he also testified that the outcome of the 1937 referendum was that the proposal that the township be dry carried.

The Commission's findings included those that (1) the proposed site was not in a dry area, (2) three liquor establishments were licensed in the area, and (3) while the city and mayor had acted in good faith, no legally sufficient reason for the denial of the license existed.

The question of whether the Commission was required to give deference to the mayor's determination to deny the requested license turns upon the meaning of article VII, section 8 of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 153). That section provides that appeals from rulings made by local liquor commissions on requests for liquor licenses, revocations thereof, and certain other matters shall be "*de novo*" (emphasis added) unless the appeal be from the commissioner of a city of over 500,000 inhabitants or a home rule city which has provided by resolution for the review to be "on the record." The city of Danville had not passed such a resolution.

The mayor asserts that even though the statute provides for a *de novo* hearing before the Commission it does not say that the Commission can ignore the ruling of the mayor as local commissioner. He argues that his special knowledge of the community, the danger involved in issuance of licenses, his unique standing in the community and other reasons of public policy require that his determination be given deference. He reasons that otherwise no purpose would be served by having the mayor of a city serve as local liquor commissioner. In support of his argument he cites *Daley v. License Appeal Com.* (1956), 11 Ill. App. 2d 421, 138 N.E.2d 73; *Day v. Illinois Liquor Com.* (1963), 39 Ill. App. 2d 281, 188 N.E.2d 883; and *Wood v. Liquor Control Com.* (1977), 55 Ill. App. 3d 228, 371 N.E.2d 138. In *Daley* and *Day* the court did indicate that deference was to be given to the decision of the local commissioner. However, *Daley* was decided under legislation which then provided that the "*propriety*" (emphasis added) of the decision of the local commissioner should be "tried *de novo*" (Ill. Rev. Stat. 1953, ch. 43, par. 153) and *Day* incorrectly assumed that the word "propriety" had not been deleted from the statute. The same mistaken assumption accounted for a similar decision in *Roberts v. Illinois Liquor Control Com.* (1965), 58 Ill. App. 2d 171, 206 N.E.2d 799. In *Wood,* the court affirmed a ruling of the circuit court reversing a decision of the Commission and reinstating the decision of the local commissioner but did so because the decision of the Commission

was contrary to the manifest weight of the evidence and not because of any stated deference given to the local commissioner.

■■ Article VII, section 8 of the Liquor Control Act is applicable here. It provides for the local liquor commissioner (the mayor) to be given 10 days' notice of a *de novo* hearing before the Commission and an opportunity to be heard at that hearing. This would appear to be all of the deference given to him. In *Local Liquor Control Com. v. Illinois Liquor Control Com.* (1978), 59 Ill. App. 3d 1, 374 N.E.2d 1298, the appellate court recently affirmed the Commission's reversal of a local commission's denial of a liquor license. The appellate court concluded that the Commission's ruling was not contrary to the manifest weight of the evidence before that body at the *de novo* hearing. The opinion stated, "Such a *de novo* hearing should be one which is had with the same effect and intent as if no actions whatsoever had been instituted before the local commission." 59 Ill. App. 3d 1, 4, 374 N.E.2d 1298, 1301.

In addition, we agree with the circuit court's well-founded reliance upon two other cases: *Carnaghi v. State Liquor Com.* (1967), 79 Ill. App. 2d 93, 223 N.E.2d 280, and *Grab It Here Liquor Store v. Illinois Liquor Control Com.* (1964), 53 Ill. App. 2d 31, 202 N.E.2d 357. In *Grab It Here* the mayor revoked a liquor license on evidence which in large part relied on hearsay evidence that the store had served minors. This revocation was affirmed by the commission and the circuit court. But the appellate court reversed, holding the commission had erred in treating the matter as though it was determining the propriety of the local commissioner's order instead of conducting a trial *de novo* as required by statute. Similarly, in *Carnaghi* the court discussed the statutory amendment and rejected the argument that the commission need only determine whether the local commissioner abused his discretion. In that case the local commissioner suspended a liquor license and was affirmed by both the commission and the circuit court. But the appellate court reversed, holding that the commission erred when it only looked into the propriety of the local commissioner's ruling and did not conduct a full *de novo* hearing.

■■ The Commission did not err in failing to give deference to the mayor's decision.

The most difficult issue in the case is the question of whether the Commission finding that the proposed site was in a wet area was contrary to the manifest weight of the evidence. If the 1937 referendum purportedly concerning the portions of Newell Township then outside the limits of the city of Danville passed, the area would remain dry even though subsequently annexed to the city of Danville. However, the parties do not dispute that absent establishment of the passage of the 1937 proposition, the Commission would have been required, as it did, to find the area to be wet.

The objections to the testimony of John Smith were based on the theory that the township records were the best evidence of the results of the election and that the parol, hearsay proof he offered was inadmissible. As his testimony was the only evidence offered as to the outcome of the referendum, the Commission must have determined it to be incompetent. If it was admissible the sole evidence would be that the area is dry and the determination that it was wet would have been contrary to the manifest weight of the evidence and erroneous. If the testimony was inadmissible, no evidence would have been presented to support the theory that the area was dry, and the Commission's determination would have been proper.

■■ Where the legislature has provided for the method of declaring the results of an election, the election is not complete until that is done. (26 Am. Jur. 2d *Elections* §304, at 127 (1956).) Here, article IX, section 7 of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 172) provided in 1937 and still provides that the results of a referendum of the type involved here shall be kept by the township clerk in a well-bound book and that the results of the election may be proved in court by the record of "official certification of the clerk" and that if the "yes" votes carried the election the record or certification will be prima facie evidence of the dry nature of the area subject to the vote. In *People ex rel. Mark v. Hartquist* (1924), 311 Ill. 127, 142 N.E. 475, the court stated that where an official was required to keep election records, those records would be the only lawful way to prove the performance of the procedures for which the records were to be kept. (See also *People ex rel. Prindable v. New York Central R.R. Co.* (1948), 400 Ill. 507, 81 N.E.2d 201.) Here, not only was the clerk required to keep a record of the results of the election in a bound book, but the recording of those returns in that book was the only statutorily prescribed method of proclaiming the results, the necessary final act to validly complete the election. Accordingly, we deem the best-evidence rule to have been applicable and a bound volume kept by the clerk or the clerk's certificate to have been the best evidence of the results. See Gard, Illinois Evidence Manual Rule 6.02 (2d ed. 1979); Cleary, Handbook of Illinois Evidence §15.5 at 249 (2d ed. 1963).

■ Upon a proper foundation being laid, secondary evidence of the contents of a lost public record is admissible. (Gard, Rule 6.06; Cleary, §15.5.) Both Gard and Cleary indicate that one element of such a foundation is a showing that the record in issue was actually made. The supreme court has so held in *People ex rel. Yohe v. Hubble* (1941), 378 Ill. 377, 38 N.E.2d 38; *Forsyth v. Vehmeyer* (1898), 176 Ill. 359, 52 N.E. 55; *Weis v. Tiernan* (1878), 91 Ill. 27; and *Gage v. Schroder* (1874), 73 Ill. 44. On the other hand, in *Kennedy v. Borah* (1907), 226 Ill. 243, 80 N.E. 767, parol evidence of the existence of a decree of adoption was ruled to have

been admissible without a showing of the prior existence of the record. All of the records of the courthouse where the adoption took place were shown to have been destroyed by fire. We choose to follow the authors of the two texts, the majority of the supreme court decisions, and the most recent one, *Hubble*, and hold that a showing that a record had been made of the result of the election was a condition precedent to use of secondary proof as to that result here.

We recognize that the hearing before the Commission was an administrative proceeding and that section 12 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1977, ch. 127, par. 1012) provides that the rules of evidence in circuit courts shall apply to such proceedings but that "evidence *may* be admitted * * * if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." (Emphasis added.) We do not interpret the above provision to require the Commission to rely upon evidence inadmissible in court proceedings.

Had the governmental authorities involved here uniformly acted upon a theory that the referendum had passed, the presumption that officers would do their duty and properly record the outcome of the election would infer the existence of such a record, but here the evidence is that officers have issued two liquor licenses within the area that would have been prohibited had the referendum carried. Application of a theory that public officials act according to their authority could as well be used to create an inference, supporting the Commission ruling, that the referendum must have failed because the licenses were issued.

The testimony of Supervisor Fox may have satisfied the other condition precedent to proving a record by secondary evidence, a diligent search for the original record. Even so the lack of showing of the existence of the record justified the Commission in disregarding secondary evidence of the results. As the newspaper articles were also secondary evidence, the Commission could also have properly rejected them even if they were offered.

⊙5 The final issue raised by the mayor is that he properly denied the license because of hazardous traffic congestion in the area, and that the Commission improperly failed to consider this. Venture contends that such factors could no longer be considered because of amendments to article IV, section 1 of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 110). However, we find this section to be inapplicable because it only limits the imposition of restrictions by the legislative action of the city council. It is not intended to limit the discretion of the mayor to consider such factors. But, even so, in this area, also, the Commission after hearing the evidence may substitute its discretion for the mayor's, and this court can only reverse the Commission, in this regard, if its determination is

contrary to the manifest weight of the evidence. In the case at bar we do not find sufficient evidence for us to conclude that the potential traffic hazard mandated a denial of the license.

For these reasons we affirm.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I dissent for the reason that the majority opinion, contrary to a referendum, decides that a liquor license can be issued in Newell Township, even though it voted dry. The labored opinion of the majority does so by concluding that the evidence required to establish the vote isn't there and by a sort of backhanded estoppel concludes that liquor licenses were previously wrongfully issued, therefore one more wrongfully issued liquor license shouldn't matter.

If all official township records are held to the same evidence requirement that the majority uses here, then there is probably very little conclusive evidence of any action by townships throughout the State. If you can get a liquor license in an area that has voted dry simply by establishing that other licenses had previously been wrongfully issued, then we indeed are opening a Pandora's box.

The ultimate result of the majority opinion is that everybody knows Newell Township is dry except those of us who wear judicial blinders and prefer not to see or ascertain the fact.