**2021 IL 126974**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126974)

THADDEUS JONES, Appellee, v. THE MUNICIPAL OFFICERS ELECTORAL BOARD FOR THE CITY OF CALUMET CITY *et al.*, Appellants.

*Opinion filed March 11, 2021.*


JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

Justice Neville took no part in the decision.


## OPINION

¶ 1    The City of Calumet City held a referendum proposing that candidates could not seek the office of mayor while simultaneously holding an elected, paid state office. Before the outcome of the referendum was certified, Representative Thaddeus Jones of the 29th District of the General Assembly filed nomination

papers seeking the office of mayor. The referendum was later certified as adopted. The day after certification, objectors brought suit to bar Jones from appearing on the February 23, 2021, ballot in light of the newly passed referendum. The Municipal Officers Electoral Board for the City of Calumet City (Board) sustained the objection and removed Jones from the ballot. On judicial review, the circuit court of Cook County affirmed the Board's decision. The court entered an agreed order, which directed that Jones's name appear on the February ballot but that all his votes be impounded or suppressed. The appellate court summarily reversed on expedited review and ordered that Jones appear on the ballot. Objectors and the Board appealed for expedited review in this court, which we granted. On their motion, we stayed the appellate court order and reinstated the agreed order pending resolution of the case.

¶ 2                                  BACKGROUND

¶ 3        On election day, November 3, 2020, the City of Calumet City (City) held a referendum. One of the questions on the ballot asked the following:

> "Shall the Municipal Code of the City of Calumet City, Cook County, Illinois be amended to adopt and incorporate the following requirement applicable to all persons seeking nomination or election to, or who hold, the office of Mayor of the City of Calumet City at the February 23, 2021 Consolidated Primary Election and each election thereafter: No person shall be eligible to seek nomination or election to, or to hold, the office of Mayor of the City of Calumet City if, at the time for filing nomination papers, that person also holds an elected, paid office created by the Constitution of the State of Illinois?"

¶ 4        On November 16, 2020, Representative Thaddeus Jones filed nomination papers seeking the office of mayor of Calumet City. Jones had held the office of representative in the General Assembly for the 29th District since 2011.

¶ 5        On November 24, 2020, the election was certified. The referendum passed with 68.39% (9485 votes) in favor and 31.61% (4385 votes) against. In addition, Jones was reelected as representative of the 29th District.

¶ 6        On November 25, 2020, Bridgette Burns and Alpheus Burge filed an objection before the Board. They argued that Jones was not qualified to seek the office of mayor at the time he filed his nomination papers because the referendum took legal effect on November 3, 2020, well before Jones filed his nomination papers on November 16, 2020. The Board agreed with objectors that the legally effective date of the referendum was November 3, 2020, sustained the objection, and ordered that Jones's name not appear on the February 23, 2021, Consolidated Primary Election ballot.

¶ 7        Jones sought judicial review in the circuit court, raising two additional issues. First, he argued that the City had exceeded its authority in passing the referendum because the candidacy qualification therein was not one allowed by article VII, section 6(f), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(f)). Second, he argued that the candidacy requirements of the referendum violated his first amendment rights under the United States Constitution (U.S. Const., amend. I).

¶ 8        The circuit court affirmed the Board's decision. On the constitutional issues, the court determined that they were not waived because the parties expressly acknowledged before the Board that the Board was not authorized to address them. On the issue of the City's authority, the court held that the referendum related to the "manner of selection" of municipal officers and therefore was within the City's home rule power to enact. Because Jones did not support his first amendment argument in any way, the court applied a rational basis analysis and found no first amendment violation.

¶ 9        The circuit court entered an agreed order, which directed that Jones's name appear on the February 23, 2021, Consolidated Primary Election ballot, with all of Jones's votes being impounded or suppressed. Jones sought expedited review in the appellate court. The appellate court summarily reversed and ordered that Jones's name appear on the February 23 ballot.

¶ 10       Objectors and the Board sought expedited review in this court, which we granted. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020); R. 311(b) (eff. July 1, 2018). We also granted objectors' emergency motion to stay the appellate court's order. In doing so, we reinstated the agreed order to maintain the status quo pending resolution of the case.

¶ 11                                 ANALYSIS

¶ 12    The issue presented for review is whether Jones was qualified to run for mayor at the time he filed his nomination papers. This requires us to determine the legally effective date of the referendum. When an election board's decision is challenged in the circuit court pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2018)), the proceeding is one of administrative review. Accordingly, it is the Board's decision that is ultimately before us and not the decision of the circuit court. *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village*, 2020 IL 125714, ¶ 10. An agency's decision on a question of law is not binding on a reviewing court, and the review is therefore *de novo*. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 13    Jones argues that he was qualified to run for mayor on November 16, 2020, the date he filed his nomination papers, because the referendum did not take legal effect until it was certified on November 24, 2020. Objectors argue that the referendum's effective date was November 3, 2020, the day of the general election. The Board determined that the legally effective date of the referendum was election day, November 3, 2020, because that was the day the referendum was "approved by a majority of those voting on the question," citing article VII, section 11(b), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 11(b)). According to the Board, "The ministerial tasks of tabulating the result of votes does not mean that the Referendum was passed on any date other than November 3, 2020."

¶ 14    We reject the notion that the counting and certification of ballots is a "purely ministerial task." In Illinois, general election law applies to municipal elections. 65 ILCS 5/3.1-10-10 (West 2018). "Where the legislature has provided for the method of declaring the results of an election, the election is not complete until that is done." *Palmer v. Illinois Liquor Control Comm'n*, 77 Ill. App. 3d 725, 730 (1979). The Election Code governs in extensive detail not just the method of declaring the results of an election but the conduct of the election in general. 10 ILCS 5/1-1 *et seq.* (West 2018). Relevant here, the Election Code requires a canvass of votes take place after voting is complete in order to account for and review the validity of all ballots cast. See *id.* §§ 22-1 to 22-18. The election authority must then certify and declare the results. See *id.* §§ 17-1 to 17-100. Here, the results of the referendum were certified on November 24, 2020. That is the legal effective date

of the referendum. Holding otherwise would cause instability and confusion, as it would create a period of time where the results of the election are legally effective yet unknown to the public. The legislature provided in the Election Code a prophylactic for this uncertainty: certification and declaration of the results. At that time, the election is decided and legally effective. Consequently, Jones was eligible to run for mayor at the time he filed his nomination papers.

¶ 15 Objectors argue before this court that, even if Jones was qualified at the time of filing his nomination papers, the subsequently passed referendum nevertheless operates to bar him from running for mayor. We find this issue forfeited because it was not raised before the Board. The Board stated as much:

> "The Parties do not argue, and the Electoral Board does not address, the issue of whether the Candidate's name may remain on the ballot if he or she becomes disqualified following the filing of his or her Nomination Papers but prior to the time for filing objections thereto. Instead, the issue presented to, and decided by this Electoral Board is whether the Referendum became effective as to render the candidate disqualified to seek (and/or hold) the office of Mayor of the City of Calumet City."

¶ 16 Having disposed of the case on these grounds, we need not address the other constitutional arguments raised. *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort").

¶ 17 CONCLUSION

¶ 18 The referendum became effective on November 24, 2020, the date the election was certified. Because Jones filed his nomination papers on November 16, 2020, he was legally qualified to run for mayor at that time. We therefore reverse the Board's decision that his nomination papers were defective at that time. We likewise vacate the stay of the appellate court's judgment and reverse the circuit court's agreed order impounding the votes for Jones.

¶ 19 Appellate court judgment affirmed.

¶ 20        Circuit court judgment reversed.

¶ 21        Board decision reversed.

¶ 22        JUSTICE NEVILLE took no part in the consideration or decision of this case.