2025 IL App (1st) 250173

SIXTH DIVISION
February 18, 2025

No. 1-25-0173

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| NYOTA FIGGS, | ) | |
| | ) | |
|    Petitioner-Appellant, | ) | |
| | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County |
| MUNICIPAL OFFICERS ELECTORAL BOARD FOR | ) | |
| THE CITY OF CALUMET CITY, and its Members, | ) | No. 2025 COEL 00003 |
| Public Member THOMAS A. JACONETTY, Chair, | ) | |
| ANTHONY SMITH, Member, and RAMONDE D. | ) | The Honorable |
| WILLIAMS, Member, MONICA GORDON, in her | ) | Araceli R. De La Cruz, |
| official Capacity as Cook County Clerk, and | ) | Judge Presiding. |
| THADDEUS JONES, | ) | |
| | ) | |
|    Respondents-Appellees. | ) | |

PRESIDING JUSTICE TAILOR delivered the judgment of the court, with opinion.
Justices McBride and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    At issue in this appeal is whether the state legislature has the authority under the Illinois Constitution to enact legislation to invalidate a referendum passed by a home rule city's voters disqualifying candidates for mayor if they hold an elected, paid office created under the Illinois Constitution, such as state representative. We hold that the Illinois Constitution grants the state

legislature the power to do so and, therefore, affirm the judgment of the circuit court finding in favor of the candidate and against the objector.

¶ 2                                    I. BACKGROUND

¶ 3       On November 3, 2020, the city of Calumet City (City) held a referendum on the question of amending its municipal code to prohibit the mayor or any mayoral candidate from also holding a paid, elected office created by the Illinois Constitution. The referendum passed and became effective on November 24, 2020. On December 10, 2020, the City adopted Ordinance 20-55 to codify the referendum. The ordinance states:

> "Effective with the February 23, 2021, consolidated primary election and each election thereafter, no person shall be eligible to seek nomination or election to, or to hold, the office of mayor of the City of Calumet City, if, at the time of filing nomination papers, that person also holds an elected, paid office created by the Constitution of the State of Illinois." Calumet City Mun. Code, § 2-39.

¶ 4       Thaddeus Jones has held the office of representative for the 29th house district of the State of Illinois since 2011. When he ran for mayor of the City in 2021, his nomination papers were challenged based on the City's referendum. However, the Illinois Supreme Court found that Jones was qualified to seek the office of mayor because the referendum had not yet been certified when he filed his nomination papers. *See Jones v. Municipal Officers Electoral Bd. for the City of Calumet City*, 2021 IL 126974, ¶ 14. Jones was elected mayor of the City on April 6, 2021.

¶ 5       On June 17, 2021, the General Assembly passed and the Governor signed Public Act 102-0015 – "An Act concerning elections" – that amended the Public Officer Simultaneous Tenure Act ("Act") by adding to it the following section 5:

"Notwithstanding any other provision of law, a unit of local government may not adopt an ordinance, referendum, or resolution that requires a member of the General Assembly to resign his or her office in order to be eligible to seek elected office in the unit of local government. Any ordinance, referendum, or resolution that contains such a provision is void. A home rule unit may not regulate the eligibility requirements for those seeking elected office in the unit of local government in a manner inconsistent with this section. This section is a limitation under subsection (i) of section 6 of Article VII of the Illinois Constitution on the concurrent exercise by home rule units of powers and functions exercised by the State. This section applies to ordinances, referenda, or resolutions adopted on or after November 8, 2016."

50 ILCS 110/5 (eff. June 17, 2021).

¶ 6 On October 21, 2024, Jones filed his nominating papers seeking re-election as the City's mayor. On November 4, 2024, Nyota Figgs, the City's Clerk, filed a petition with the Municipal Officers Electoral Board for the City of Calumet City (Board) seeking to invalidate Jones's nominating papers, alleging that he was ineligible to hold the office of mayor because he is a constitutional officer of the state of Illinois. Referencing the referendum passed by the voters, she argued that "[n]o constitutional authority exists for the State Legislature to take away th[e] power delegated directly to the people." Jones filed a motion to strike in response, arguing that section 5 of the Act invalidates the City's referendum. In her response to Jones's motion to strike, Figgs argued that section 5 of the Act is an "affront to basic principles of constitutional authority and blatantly violates Article VII, section 6(f) of the Illinois Constitution," which states that a home rule municipality may "provide for its officers, their manner of selection and terms of office", and

3

"[a]s such, the application proposed by Jones is unconstitutional as applied here and does not present a lawful basis upon which [Figgs's] Petition can be rejected."

¶ 7    On December 6, 2024, the Board convened and heard arguments on Figgs's petition. Figgs referenced "one constitutional (issue)" that she would "touch on *** to make a record and preserve that for any needed appeal" and then argued that, with respect to the referendum, "the General Assembly cannot retroactively go back and change *** constitutionally enacted provisions."

¶ 8    The Board overruled Figgs's petition, holding that "based on the plain and ordinary reading of the unambiguous language in Section 5 of the [Act], Calumet City's Referendum is effectively void and nullified." The Board did not rule on any constitutional issues, expressly stating that it would "confine [itself] to what the election code *** permit[s] us to inquire into" because it did "not have authority to pass on constitutional questions."

¶ 9    On January 3, 2025, Figgs filed a petition for judicial review of the Board's decision in the circuit court. Figgs challenged the constitutionality of section 5 of the Act, arguing that it violated Article VII, section 6(f) of the Illinois Constitution. She also challenged the statute's constitutionality on a number of grounds that were not raised before the Board, making arguments that section 5 violated the First Amendment and due process, constituted special legislation and an *ex post facto* law, and that Public Act No. 102-0015, which included the addition of section 5 to the Act, violated the single subject clause of the Illinois Constitution.

¶ 10    On January 30, 2025, the circuit court affirmed the Board's decision. It found that the Board properly concluded, based on the plain language of section 5 of the Act, that Jones was eligible to seek and hold the office of mayor because the statute invalidated the City's referendum. The court declined to consider Figgs's constitutional claims involving the first amendment, due process, special legislation, the single subject rule, and *ex post facto* laws because Figgs had failed to

4

preserve them. The court noted that Figgs "had ample opportunity, in at least three instances, to assert any and all constitutional violations she thought were necessary to support her objection" yet there was "no specific mention of the[se] separate or distinct constitutional issues in the entire record." The court found that "the only constitutional issue preserved is whether Section 5 of *** the [Act] *** can validly nullify Calumet City's referendum as applied." It then addressed the merits of that claim.

¶ 11 Figgs argued that section 5 of the Act "blatantly violates Article VII, Section 6(f) of the Illinois Constitution" and that the application of section 5 "is unconstitutional as applied here [to Jones's eligibility to run for office while maintaining his position as a member of the General Assembly] and does not present a lawful basis upon which [Figgs's] Petition can be rejected." She argued that section 5 could not be retroactively applied or "do anything to the referendum that was adopted by the People of Calumet City because they voted on it." Jones argued in response that by enacting section 5, the General Assembly properly exercised its constitutional authority pursuant to section 6(i) of Article VII of the Illinois Constitution to specifically limit the power of home rule units.

¶ 12 The court rejected Figgs's argument, finding that "[t]he General Assembly properly followed the required procedures and asserted its proper authority under the Illinois Constitution to limit the function of a home rule unit." It reasoned that to find otherwise would require the Court to "completely ignore or read subsection[] (i) *** of Section 6 [of Article VII] out of the constitution." The court also concluded that the legislature did not "surpass[] its authority in including a retroactive provision in Section 5." The court affirmed the Board's decision, held that section 5 of the Act was constitutional as applied to the voter's referendum, and ordered that

Jones's name be printed on the ballot for the office of the City's mayor in the February 25, 2025, consolidated primary election. Figgs timely appealed.

¶ 13                                II. ANALYSIS

¶ 14        A. Constitutionality of Section 5 of the Public Officer Simultaneous Tenure Act

¶ 15    On appeal, Figgs does not challenge the Board's decision. Instead, she challenges the circuit court's decision and asks us to hold that section 5 of the Act is unconstitutional as applied here. Normally, when an electoral board's decision is challenged in the circuit court, we review the board's decision, not the decision of the circuit court. *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village,* 2020 IL 125714, ¶ 10. However, in this case, the Board did not pass on the constitutional question and it is the circuit court's ruling that the statute is constitutional that warrants our review. *Id*. Because the constitutionality of a statute involves a question of law, we review this issue *de novo. Bartlow v. Costigan*, 2014 IL 115152, ¶ 17; *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2008).

¶ 16    Figgs argues that "[t]he newly added 'Section 5' of the [Act] is unconstitutional because it retroactively nullifies the rights of municipal voters, namely those of the City of Calumet City." She argues that "[b]ecause section 5 of the *** Act impermissibly deprives the voters of home rule municipalities of their rights to determine the manner for selecting their officers and the terms of office by referendum, section 5 is unconstitutional, illegal, and unenforceable."

¶ 17    As a threshold matter, Figgs's argument is premised entirely on the assumption that the City's referendum was a valid exercise of its home rule power under Article VII, section 6(f) of the Illinois Constitution. In his brief, Jones argues that the City's authority to pass the referendum was "questionable" because it imposes eligibility requirements "beyond those set forth in the Illinois statute." Specifically, he contends that the referendum only imposed an eligibility

requirement to run for mayor; it did not provide for the City's officers, their manner of selection, or terms of office, which constitutes the scope of a home rule unit's authority under section 6(f). Jones cites various provisions of the constitution that distinguish between a candidate's eligibility to run for office, on one hand, and the manner of selection and terms of office of a city's officers, on the other hand. However, Jones has not challenged the validity of the referendum here and, in fact, concedes in his brief that we need not reach this issue because the legislature invalidated the referendum and the ordinance that codified the referendum. Therefore, we assume, without deciding, that the referendum was a valid exercise of the City's home rule authority. To be clear, we express no opinion on the validity of the referendum, other than to point out that if the referendum exceeded the City's home rule authority under section 6(f) because it imposed an eligibility requirement to run for mayor rather than providing for the City's officers, their manner of section, or terms of office, then Figgs' objections to Jones's candidacy would be moot. *Cf. Jones v. City of Calumet City*, 2017 IL App (1st) 170236, ¶¶ 4, 27 (finding that the city's referendum did not violate section 6(f) where it provided that no person may seek election to or hold the office of mayor where "that person has held the elected office of either mayor or alderman of the City of Calumet City for four (4) or more consecutive full four (4) year terms").

¶ 18     We now turn to Figgs's constitutional challenge to section 5 of the Act. "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *Burns,* 2020 IL 125714, ¶ 13. "In undertaking our review, we begin with the familiar principle that statutes carry a strong presumption of constitutionality. A party claiming that a statute is unconstitutional bears the burden of establishing the statute's constitutional infirmity. This court has a duty to uphold the constitutionality of a statute if it is

reasonably possible to do so." *Moline School District No. 40 Board of Education v. Quinn,* 2016 IL 119704, ¶ 16.

¶ 19    Figgs bases her argument on Article VII, section 6(f) of the Illinois Constitution, which states in relevant part:

> "A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law."

> Ill. Const. art. VII, § 6(f) (West 2022).

She argues that section 6(f) "allows the voters of a home rule municipality [to] decide for themselves, via referendum, how best to limit an officeholder's term or qualifications."

¶ 20    However, a home rule municipality's power under section 6(f) is not absolute. Article VII, section 6(i) of the Illinois Constitution, which "governs the interplay between home rule and state authority" (*Berrios v. Cook County Board of Commissioners*, 2018 IL App (1st) 180654, ¶ 57), states:

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."

> Ill. Const. art. VII, § 6(i) (West 2022).

¶ 21    In *Heynard v. Municipal Officers of Village of Dolton*, 2022 IL App (1st) 220898, the court acknowledged that the rights of voters to select candidates of their choice to lead their communities were "of paramount importance." *Id.* ¶ 36. The court pointed out, however, that "sovereign authority to alter the form of local governments is jointly held by *both* the voters *and* the General

8

Assembly" and reasoned that "[e]ven *after* voters approve a referendum to change a form of government, the General Assembly may reverse that action, even to the extent of making the change retroactive." *Id*. (Emphasis in original.)

¶ 22    The General Assembly enacted section 5 of the Act, which states that a "unit of local government may not adopt an ordinance, referendum, or resolution that requires a member of the General Assembly to resign his or her office in order to be eligible to seek elected office in the unit of local government" and that "[a]ny ordinance, referendum, or resolution that contains such a provision is void." 50 ILCS 110/5. By its plain language, the statute indicates that it was "a limitation under subsection (i) of section 6 of Article VII of the Illinois Constitution on the concurrent exercise by home rule units of powers and functions exercised by the State." *Id*. Thus, Figgs's claim that "[n]o Constitutional authority exists for the State Legislature to take away that power delegated directly to the people," is belied by section 6(i), which expressly authorizes the legislature to "limit the concurrent exercise [of power] or specifically declare the State's exercise [of power] to be exclusive." *Palm v. 2800 Lake Shore Condominium Association*, 2013 IL 110505, ¶ 31 (holding that the General Assembly can "preempt the exercise of a municipality's home rule powers by expressly limiting that authority" and can do so by including an "express statement to that effect" in the statute); *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 287 (2001) ("the General Assembly can expressly limit the exercise of home rule power"); *Burns,* 2020 IL 125714, ¶ 21 ("The General Assembly may always limit the powers of home rule unit under sections 6(h) and 6(i) as long as it does so expressly."). Thus, we find section 5 of the Act to be a valid exercise of the legislature's authority to limit the powers of home rule units under section 6(i) of Article VII of the Illinois Constitution.

¶ 23    Figgs then argues that section 5 cannot be retroactively applied here, because it would "impair[] the voters' constitutional rights to determine the means of selecting their own municipal officers, as guaranteed by the Illinois Constitution." However, "[e]ven *after* voters approve a referendum to change a form of government, the General Assembly may reverse that action, even to the extent of making the change retroactive." *Heynard*, 2022 IL App (1st) 220898, ¶ 36 (emphasis in original). When section 5 of the Act became effective on June 17, 2021, it voided any "ordinance, referendum, or resolution that requires a member of the General Assembly to resign his or her office in order to be eligible to seek elected office in the unit of local government." 50 ILCS 110/5. Moreover, whether the General Assembly had the authority to apply section 5 retroactively to 2016 makes no difference here because the City's ordinance, which was adopted in 2020 and became effective in February of 2021, had been legislatively invalidated before Jones submitted his nominating papers in October 2024 for the present election. Therefore, Jones's current eligibility to run for mayor of the City does not run afoul of any valid ordinance.

¶ 24                          B. Additional Constitutional Arguments

¶ 25    Figgs raises a number of additional constitutional arguments on appeal, including: (1) whether section 5 of the Act violates the first amendment rights of the City's voters; (2) whether it constitutes "special legislation"; (3) whether it is an *ex post facto* law; (4) whether it violates due process; and (5) whether Public Act 102-0015, the bill that included section 5 and is commonly known as the Election Omnibus Bill, violates the single subject rule. However, none of these constitutional claims were raised by Figgs in her petition objecting to Jones's nominating petitions, briefing, or argument before the Board. Figgs argues that it was unnecessary to raise her precise constitutional arguments before the Board in order to preserve them, because the Board had no authority to rule on them. See, *e.g., Goodman v. Ward,* 241 Ill. 2d 398, 411 (2011) (the election

board has no authority to declare a statute unconstitutional or to question the validity of the statute); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 214 (2008) (same). She argues that because she indicated she would be challenging the constitutionality of the statute, this sufficed to preserve any and all constitutional arguments she may elect to raise on judicial review. We disagree. Figgs did not assert that she would be challenging the constitutionality of the statute on multiple grounds, and instead, only argued that based on "the basic principles of Article 7, subsection 6(f) of the Constitution" the powers delegated to the people via referendum could not be superseded by laws enacted by the General Assembly. Figgs advanced no other constitutional claim. Therefore, we agree with the circuit court that Figgs failed to properly preserve these arguments. See *Cinkus,* 228 Ill. 2d at 212 ("if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review"); *Lehmann v. Department of Children & Family Services,* 342 Ill. App. 3d 1069, 1078 (2003) (failure to raise an issue before the administrative agency, even a constitutional question, waives the issue for review); *Dombrowski v. City of Chicago,* 363 Ill. App. 3d 420, 425 (2005) ("While administrative agencies do not have the judicial authority to determine the constitutionality of the legislation they are charged with enforcing [citation], it is generally required that a litigant raise any challenges to a statute's validity at the administrative hearing and on review to the circuit court, lest the challenge be waived for purposes of appellate review."). Our supreme court has "repeatedly advised that a party in an administrative proceeding should assert a constitutional challenge on the record before the administrative tribunal, because administrative review is confined to the evidence offered before the agency. Such a practice avoids piecemeal litigation and, more importantly, allows opposing parties a full opportunity to refute the constitutional challenge." *Cinkus,* 228 Ill. 2d at

214. For example, in the present case, Figgs argued in the circuit court for the first time that the General Assembly enacted special legislation that benefited only Jones in violation of the Illinois Constitution, yet there is no record evidence to support her claim that the legislation solely benefited Jones. Accordingly, we find that Figgs cannot now raise the constitutional claims she failed to articulate and preserve before the Board.

¶ 26                                         III. CONCLUSION

¶ 27    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 28    Affirmed.

*Nyota Figgs v. Thaddeus Jones,* **2025 IL App (1st) 250173**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2025-COEL-000003, the Hon. Araceli R. De La Cruz Judge, presiding. |
| **Attorneys for Appellant:** | Steven Michael Laduzinsky of Laduzinsky & Associates, P.C. and Burton Stephen Odelson of Odelson, Murphey, Frazier, & McGrath, Ltd., for appellant. |
| **Attorneys for Appellees:** | Edward Barlett Mullen, III of Mullen Law Offices and Keri-Lyn Joy Krafthefer and Tyler Jared Smith of Ancel Glink, P.C., for appellees. |