# Illinois Official Reports

## Supreme Court

---

**Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village,**
**2020 IL 125714**

---

Caption in Supreme
Court:

TIMOTHY BURNS, Appellee, v. THE MUNICIPAL OFFICERS
ELECTORAL BOARD OF THE VILLAGE OF ELK GROVE
VILLAGE *et al.* (Benjamin R. Lee, Appellant).

Docket No.

125714

Filed

February 26, 2020

Decision Under
Review

Appeal from the Circuit Court of Cook County; the Hon. Maureen O.
Hannon, Judge, presiding.

Judgment

Circuit court judgment reversed in part and vacated in part.
Board decision affirmed.

Counsel on
Appeal

Pericles C. Abbasi, of Chicago, for appellant.

Burton S. Odelson and Ross D. Secler, of Odelson & Sterk, Ltd., of
Evergreen Park for appellee.

Justices        JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Neville took no part in the decision.

## OPINION

¶ 1        In this case we are asked to consider the validity of a referendum seeking to impose term limits on the elected offices of village president and village trustee in Elk Grove Village. The village electoral board concluded that the referendum violated section 3.1-10-17 of the Illinois Municipal Code. Pub. Act 101-114, § 5 (eff. July 19, 2019) (adding 65 ILCS 5/3.1-10-17). On judicial review, the circuit court of Cook County reversed, holding that section 3.1-10-17 was unconstitutional and ordering that the term-limits referendum appear on the March 17, 2020, general primary ballot.[1] The matter was appealed directly to this court pursuant to Illinois Supreme Court Rule 302(a) (eff. Oct. 4, 2011). For the following reasons, we reverse the judgment of the circuit court in part, vacate in part, and affirm the decision of the electoral board.

¶ 2                          BACKGROUND

¶ 3        On July 8, 2019, Timothy Burns, the principal proponent of a term-limits referendum, filed a petition seeking to place the question of whether to impose term limits on the elected offices of village president and village trustee in Elk Grove Village on the March 17, 2020, general primary election ballot. The proposed question asked:

"Shall the terms of office for those persons seeking nomination or election to, or who are holding the office of, Village President (Mayor) and Village trustee in the Village of Elk Grove Village, be limited such that, at the February 23, 2021 Consolidated Primary Election and all subsequent elections, no person shall be eligible to seek nomination or election to, or to hold, elected office in the Village of Elk Grove Village where that person has held the same elected office for two (2) or more consecutive, four (4) year terms?"

¶ 4        Benjamin Lee, a registered voter of the village, filed an objection, relying on section 3.1-10-17 of the Municipal Code. Lee argued that section provides that any term-limit referendum must be prospective only—that is, a referendum can only consider terms in office served after the passage of the referendum to determine a candidate's eligibility. Lee maintained that the referendum proposed by Burns violated that section because it calculated and counted prior service as village president or village trustee before the passage of the referendum in determining eligibility to seek another term in that office. In response to the objection, Burns maintained that section 3.1-10-17 was unconstitutional, facially and as applied to his petition for referendum.

---

[1]The election held on the third Tuesday in March is the "general primary election," pursuant to the Election Code. 10 ILCS 5/2A-1.1 (West 2018).

¶ 5    The electoral board agreed with Lee,[2] sustaining the objection to the petition on the grounds that the petition conflicted with section 3.1-10-17. The board found that the statute allowed term limits to be prospective only, that the referendum was not prospective in its consideration of prior service, and that the limited scope of the board's authority required it to accept the validity of the statute without considering whether it was unconstitutional. Accordingly, the board ordered that the referendum should not appear on the ballot in the March 17, 2020, general primary election.

¶ 6    Burns sought judicial review in the circuit court of Cook County and requested that the court consider the constitutionality of the statute. The circuit court reversed the decision of the electoral board, holding that section 3.1-10-17 was unconstitutional on its face and as applied.

¶ 7    The circuit court found that the General Assembly has the constitutional authority to expressly restrict the power of home rule municipalities to ensure that term limits can only be instituted prospectively. However, the court ruled that section 3.1-10-17 unlawfully applied retroactively to term limits referenda that had already been approved by the voters in other municipalities since November 2016. The circuit court further found that the unlawful provisions could not be severed from the rest of the statute.

¶ 8    Thereafter, Lee filed a notice of appeal directly to this court pursuant to Rule 302(a)(1). Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011). This court granted the parties' agreed motion to expedite the appeal and set an expedited briefing schedule without oral argument. Ill. S. Ct. R. 311(b) (eff. July 1, 2018).

¶ 9                                                    ANALYSIS

¶ 10   When an election board's decision is challenged in the circuit court pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2018)), the proceeding is one of administrative review. Accordingly, it is the election board's decision that is ultimately before us, and not the decision of the circuit court. However, the election board has no authority to declare a statute unconstitutional or to question the validity of the statute. *Goodman v. Ward*, 241 Ill. 2d 398, 411 (2011). Thus, it is the circuit court's declaration that section 3.1-10-17 is unconstitutional that warrants this court's direct review. The constitutionality of a statute involves a question of law, making our review *de novo*. *Bartlow v. Costigan*, 2014 IL 115152, ¶ 17.

¶ 11   Section 3.1-10-17 provides as follows:

> "(a) The imposition of term limits by referendum, ordinance, or otherwise must be prospective. Elective office held prior to the effective date of any term limit imposed by a municipality shall not prohibit a person otherwise eligible from running for or holding elective office in that municipality. Term limits imposed in a manner

_____

[2]The electoral board agreed with Lee on remand from the circuit court, after initially dismissing Lee's objection as "premature." Lee had filed his objection on October 22, and the electoral board reasoned that he had to wait until December 17. See 10 ILCS 5/10-8 (West 2018) (requiring objections to petitions for referendum to be "duly made in writing within 5 business days after the last day for filing the *** petition for a public question"). After the electoral board found for Lee on remand, the circuit court ruled on Burns's counterpetition in an order captioned *Burns v. Municipal Officers Electoral Board*, No. 19-COEL-37 (Cir. Ct. Cook County, Jan. 15, 2020).

inconsistent with this Section remain valid prospectively, but are invalid as they apply to service prior to the enactment of the term limits.

(b) The imposition of term limits by referendum, ordinance, or otherwise shall only apply to terms for the same office or that category of municipal office. Term limits imposed in a manner inconsistent with this subsection are invalid as they apply to service in other categories of municipal offices.

(c) A home rule unit may not regulate term limits in a manner inconsistent with this Section. This Section is a limitation under subsection (i) of Section 6 of Article VII of the Illinois Constitution on the concurrent exercise by home rule units of powers and functions exercised by the State.

(d) This Section applies to all term limits imposed by a municipality by referendum, ordinance, or otherwise passed on or after November 8, 2016." Pub. Act 101-114, § 5 (eff. July 19, 2019) (adding 65 ILCS 5/3.1-10-17).

¶ 12 There is no dispute here that, if valid, the term-limits statute would bar the referendum question from the ballot. However, Burns contends that section 3.1-10-17 unlawfully deprives the voters of the village and the voters of other municipalities their state constitutional right to choose by referendum the terms and manner of selecting their elected municipal officers. He maintains that the statute is unconstitutional both facially and as applied to this case.

¶ 13 A facial challenge to a statute is the most difficult challenge to mount because a statute will be deemed facially invalid only if no set of circumstances exists under which the statute would be valid. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. *City of Chicago v. Alexander*, 2017 IL 120350, ¶ 27.

¶ 14 Under either, we are mindful that statutes enjoy a strong presumption of constitutionality. *Oswald v. Hamer*, 2018 IL 122203, ¶ 29. "The party challenging the validity of a statute has the burden of clearly establishing the alleged constitutional infirmity." *Id.* If reasonably possible, it is the court's duty to construe the statute in a way that will uphold its constitutionality, and any doubt in the statute's construction will be resolved in favor of the statute's validity. *Id.*

¶ 15 Contrary to Burns's assertion, we agree with the circuit court that the General Assembly has the authority to legislate in this area prospectively because it has expressly indicated its intent to do so.

¶ 16 In order to understand Burns's argument that the legislature exceeded its authority, we must first consider the relationship between the State and the units of local government under the 1970 Illinois Constitution. Generally, every subject within the scope of governmental affairs rests in the General Assembly, unless inhibited by some constitutional provision. See Ill. Const. 1970, art. II, § 2; Ill. Const. 1970, art. IV, § 1 (the General Assembly is vested with all legislative power by the constitution). Article VII, section 6, of the constitution provides home rule units with certain powers with respect to local concerns. Ill. Const. 1970, art. VII, § 6(a) ("a home rule unit may exercise any power and perform any function pertaining to its government").

¶ 17 Relevant to this referendum, Elk Grove Village is a home rule municipality. As such, it is specifically governed by article VII, section 6(f), of the Illinois Constitution, which addresses

- 4 -

a home rule municipality's manner of selection of officers and implementation of terms of office. That section empowers a home rule municipality to "provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law." Ill. Const. 1970, art. VII, § 6(f). Thus, under section 6(f), in the absence of a legislative grant of authority, a home rule municipality is authorized to "chang[e] the eligibility requirements for those candidates running [for office]" by limiting the officeholder's term via a referendum approved by the voters. *Johnson v. Ames*, 2016 IL 121563, ¶ 19.

¶ 18 Under the same constitutional framework, however, the General Assembly may choose to "preempt the exercise of a municipality's home rule powers by expressly limiting that authority." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 31 (citing *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 287 (2001)). Under article VII, section 6(h), the General Assembly "may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h).

¶ 19 If the General Assembly has not expressly preempted an area and taken exclusive control over it, it may, instead, limit the power of home rule units to act concurrently with the State. If the General Assembly wishes to limit the power of home rule units in this way, it must also do so with express language to that effect. Ill. Const. 1970, art. VII, § 6(i); 5 ILCS 70/7 (West 2018) (providing that, if the legislature seeks to limit the exercise of home rule powers, the statute must contain an express statement to that effect).

¶ 20 Here, section 3.1-10-17 of the Municipal Code indeed contains an express limitation on the power of a home rule unit to regulate matters involving term limits. Subsection (c) specifically provides that

> "[a] home rule unit may not regulate term limits in a manner inconsistent with this Section. This Section is a limitation under subsection (i) of Section 6 of Article VII of the Illinois Constitution on the concurrent exercise by home rule units of powers and functions exercised by the State." Pub. Act 101-114, § 5 (eff. July 19, 2019) (adding 65 ILCS 5/3.1-10-17(c)).

¶ 21 Thus, while the General Assembly has not exclusively preempted a home rule unit from exercising its home rule powers with respect to term limits, it has chosen to place a limitation on the manner in which term limits are calculated in the next election and subsequent elections. By enacting section 3.1-10-17, the General Assembly demonstrated its intent that any term-limit referendum must be applied prospectively, because only terms served after the passage of the referendum may be considered to determine a candidate's eligibility. The General Assembly properly followed the required procedures and asserted its proper authority under the Illinois Constitution to limit a function of a home rule unit. Burns's novel reading of section 6(f) would read sections 6(h) and 6(i) out of the constitution. The General Assembly may always limit the powers of a home rule unit under sections 6(h) and 6(i) as long as it does so expressly.

¶ 22 Accordingly, consistent with the circuit court's findings, this case presents a circumstance under which the statute can be validly applied. Accordingly, Burns's challenge must fail, both as applied and facially. *In re M.T.*, 221 Ill. 2d 517, 537 (2006) ("[S]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail." (Internal quotation marks omitted.)).

¶ 23 Nevertheless, Burns additionally argues that the statute is otherwise invalid because it retroactively applies to other municipalities that have already passed term limits by referendum, nullifying their voters' constitutional rights. The circuit court agreed, basing its ruling on what it perceived was a problem in the manner of the statute's "retroactive application" in the last sentence in subsection (a) and in subsection (d).

¶ 24 The last sentence in subsection (a) provides that "[t]erm limits imposed in a manner inconsistent with this Section remain valid prospectively, but are invalid as they apply to service prior to the enactment of the term limits." Pub. Act 101-114, § 5 (eff. July 19, 2019) (adding 65 ILCS 5/3.1-10-17(a)). Subsection (d) is an express temporal limitation on subsection (a), providing that "[t]his Section applies to all term limits imposed by a municipality by referendum, ordinance, or otherwise passed on or after November 8, 2016." *Id.* (adding 65 ILCS 5/3.1-10-17(d)).

¶ 25 To the extent that these provisions refer to term limits that have already been imposed, they are not implicated here. No term limit has yet been imposed by Elk Grove Village. Thus, Burns is asking us to consider whether provisions in the statute that are not applicable here have any unlawful retroactive impact as applied to voters' constitutional rights in other municipalities.

¶ 26 As we have explained, " '[a] fundamental rule of constitutional law is that a court will not determine the constitutionality of a provision of a statute which does not affect the parties to the cause under consideration.' " *Flynn v. Ryan*, 199 Ill. 2d 430, 438-39 (2002) (quoting *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000)); *People v. Mosley*, 2015 IL 115872, ¶ 11 ("courts do not rule on the constitutionality of a statute where its provisions do not affect the parties" (citing *Klein v. Department of Registration & Education*, 412 Ill. 75, 87-88 (1952))). Whether the statute implicates voters' constitutional rights as applied to term limit referenda previously passed in other municipalities does not affect Elk Grove Village or its voters. Accordingly, we find the trial court erred in considering those provisions.

¶ 27                                                   CONCLUSION

¶ 28 For all of the foregoing reasons, we find the relevant provisions of section 3.1-10-17 of the Municipal Code to be constitutional both facially and as applied to the proposed referendum in Elk Grove Village. Accordingly, we reverse the judgment of the circuit court, vacate that portion of the court's ruling as to provisions that do not affect the parties, and affirm the decision of the electoral board, which found the proposed referendum invalid.

¶ 29 Circuit court judgment reversed in part and vacated in part.

¶ 30 Board decision affirmed.

¶ 31 JUSTICE NEVILLE took no part in the consideration or decision of this case.