# Illinois Official Reports

## Appellate Court

---

### *Buchanan v. Jones*, 2021 IL App (1st) 210169

---

| | |
|---|---|
| Appellate Court Caption | YARA BUCHANAN, Petitioner-Appellant, v. SHERMAN JONES, in His Official Capacity as Candidate; THE MUNICIPAL OFFICERS ELECTORAL BOARD FOR THE VILLAGE OF BROADVIEW, Sitting as the Duly Constituted Electoral Board to Hear and Pass Upon Objections to the Nominating Papers of the Candidates for the Office of Mayor of the Village of Broadview for the April 6, 2021, Consolidated Election; MICHAEL DORF, ELLEN RAYMOND, and ALFRED SWANSON, in Their Official Capacity as Members of the Municipal Officers Electoral Board for the Village of Broadview; and HONORABLE KAREN YARBROUGH, in Her Official Capacity as the Cook County Clerk, Respondents-Appellees. |
| District & No. | First District, Fifth Division<br>No. 1-21-0169 |
| Filed<br>Rehearing denied | March 9, 2021<br>March 11, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2021-CH-00478; the Hon. LaGuina Clay-Herron, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Luke P. Hajzl, of Rolling Meadows, for appellant.<br><br>Pericles C. Abbasi, of Chicago, for appellee. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Rochford concurred in the judgment and opinion.

# OPINION

¶ 1    Yara Buchanan appeals from an order of the circuit court of Cook County that affirmed a decision of the Municipal Officers Electoral Board for the Village of Broadview (Board), dismissing her objections to the nominating papers of Sherman Jones for nomination to the office of president of the Village of Broadview (Village) at the April 6, 2021, consolidated election. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2    In this appeal, we are tasked with determining the constitutionality of section 3.1-10-17 of the Illinois Municipal Code (65 ILCS 5/3.1-10-17 (West Supp. 2019)) as applied to a referendum adopted by the voters of the Village limiting the terms of office for individuals elected to the office of village president.

¶ 3    On November 8, 2016, a majority of the voters of the Village voting in the general election approved the following referendum (hereinafter referred to as the 2016 Referendum):

"Shall the terms of office of those persons elected to the office of Village President in the Village of Broadview, at the April 4, 2017 consolidated election, and each election for said office thereafter, be limited such that no person shall be eligible to seek election to or hold the office of Village President where that person has been previously elected to the office of Village President of the Village of Broadview for two (2) consecutive full four (4) year terms?"

¶ 4    The Illinois Municipal Code was amended effective July 19, 2019, adding section 3.1-10-17, which provides, in relevant part, that:

"(a) The imposition of term limits by referendum, ordinance, or otherwise must be prospective. Elective office held prior to the effective date of any term limit imposed by a municipality shall not prohibit a person otherwise eligible from running for or holding elective office in that municipality. Term limits imposed in a manner inconsistent with this Section remain valid prospectively, but are invalid as they apply to service prior to the enactment of the term limits.

(b) The imposition of term limits by referendum, ordinance, or otherwise shall only apply to terms for the same office or that category of municipal office. Term limits imposed in a manner inconsistent with this subsection are invalid as they apply to service in other categories of municipal offices.
        ***
(d) This Section applies to all term limits imposed by a municipality by referendum, ordinance, or otherwise passed on or after November 8, 2016." *Id.*

¶ 5    Jones filed nomination papers for nomination to the office of president of the Village at the April 6, 2021, consolidated election. Buchanan, a registered voter in the Village, filed objections to Jones's nomination papers with the Board. Her objection petition listed a number of objections to Jones's nominating papers. However, Buchanan withdrew all of her objections

with the exception of one. In the remaining objection, Buchanan argued that, pursuant to the 2016 Referendum, Jones was not eligible to seek election to or hold the office of village president, having been previously elected to that office for two consecutive full four-year terms prior to the passage of the 2016 Referendum, and as a consequence, Jones's name should not appear on the April 6, 2021, consolidated election ballot.

¶ 6        On January 26, 2021, the Board issued a unanimous decision, dismissing Buchanan's objection and ordering Jones's name to appear on the Village's April 6, 2021, consolidated election ballot. The Board found that section 3.1-10-17 of the Illinois Municipal Code applied to candidates seeking election at the Village's April 6, 2021, consolidated election, and therefore, any terms of office as village president that Jones served prior to November 8, 2016, cannot be included in determining his eligibility to run for the office of village president in the April 6, 2021, Consolidated Election.

¶ 7        Buchanan filed a timely petition for judicial review of the Board's decision in the circuit court pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2018)). On February 19, 2021, the circuit court entered an order affirming the Board's decision, finding that section 3.1-10-17 of the Illinois Municipal Code is constitutional. On February 22, 2021, Buchanan filed a notice of appeal and a motion requesting this court to expedite the appeal. That motion was granted on the same day.

¶ 8        When a decision of an electoral board is challenged in the circuit court, the proceeding is akin to one for administrative review. *Burns v. Municipal Officers Election Board of the Village of Elk Grove Village*, 2020 IL 125714, ¶ 10. On review, it is ordinarily the electoral board's decision that is before us, not the circuit court's decision. Buchanan acknowledged before the circuit court that "the Board correctly decided the case based upon the facts, law, issues, and arguments they could consider." However, when, as in this case, the constitutionality of a statute is at issue, a question beyond the jurisdiction of an electoral board, it is the circuit court's resolution of the issue that we review. *Id.* The constitutionality of a statute is a question of law, and our review is *de novo*. *Id.*

¶ 9        In *Burns*, the supreme court was asked to consider the validity of a referendum seeking to impose term limits on the elected offices of village president and village trustee in Elk Grove Village (hereinafter referred to as the 2020 Elk Grove Referendum) to be voted on at the March 17, 2020, general primary election. *Id.* ¶ 1. The supreme court held that section 3.1-10-17 of the Illinois Municipal Code is both facially constitutional and constitutional as applied to the 2020 Elk Grove Referendum. *Id.* ¶ 28. Buchanan acknowledges that, based on the supreme court's decision in *Burns*, there is no issue in this case as to the facial constitutionality of the statute. She argues, however, that the facts in *Burns* are distinguishable from those present in the instant case as they relate to the constitutionality of section 3.1-10-17 as applied to referendums adopted prior to the effective date of the statute. In *Burns*, the 2020 Elk Grove Referendum was to be voted on at the March 17, 2020, general primary election, a date after the adoption of section 3.1-10-17, whereas in this case, the voters of Broadview approved the 2016 Referendum prior to the adoption of section 3.1-10-17. As Buchanan correctly notes, the supreme court in *Burns* declined to rule on the constitutionality of section 3.1-10-17 as applied to term-limit referendums, such as the 2016 Referendum, approved by municipalities prior to the enactment of the statute. *Id.* ¶ 26.

¶ 10        As a preliminary matter, we note that, on February 22, 2021, Buchanan sent notice to the Illinois Attorney General as required by Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006)

- 3 -

that the constitutionality of section 3.1-10-17 of the Illinois Municipal Code has been raised in this appeal. On March 3, 2021, the clerk of this court was notified that the Attorney General has elected not to intervene.

¶ 11      In urging reversal of the circuit court's judgment, Buchanan argues that section 3.1-10-17 of the Illinois Municipal Code is unconstitutional as applied to the 2016 Referendum and, as a result, Jones is ineligible to seek election to or hold the office of village president of the Village under the provisions of the 2016 Referendum and his name should be stricken from the April 6, 2021, consolidated election ballot. She does not contest the legislature's ability to alter or limit the powers of a non-home-rule municipality but contends that the legislature cannot invalidate prior voter action that was constitutionally exercised. Buchanan asserts that the right to vote is guaranteed under article III, section 1, of the Illinois Constitution (Ill. Const. 1970, art. III, § 1) and argues that section 3.1-10-17 of the Illinois Municipal Code as applied to the 2016 Referendum implicates the voting rights of the citizens of Broadview because it nullifies the results of a valid election, which set term limits for individuals holding the office of village president and determined who is ineligible to seek election to or hold that office. See *Tully v. Edgar*, 171 Ill. 2d 297, 305 (1996).

¶ 12      In support of the circuit court's judgment and the constitutionality of section 3.1-10-17 of the Illinois Municipal Code as applied to the 2016 Referendum, Jones argues that, in enacting the statute, the legislature did not nullify the results of the election at which the 2016 Referendum was adopted. He contends that section 3.1-10-17 merely alters the eligibility requirements for candidates in municipalities that have, by referendum, adopted term limits in elections occurring on or after November 8, 2016, by providing that service prior to the adoption of such a term-limits referendum is not to be considered in determining a candidate's eligibility to seek election to or hold office. According to Jones, section 3.1-10-17 does not in any way implicate the manner in which a term-limits referendum was applied in elections occurring prior to the effective date of the statute, and as a consequence, the statute has no retroactive impact.

¶ 13      For the reasons that follow, we find that section 3.1-10-17 of the Illinois Municipal Code is not unconstitutional as applied to the two-term prior service provision set forth in the 2016 Referendum.

¶ 14      Clearly, the passage of the 2016 Referendum adopting term limits for the office of village president was a constitutionally valid exercise by the voters of the Village. Article VII, section 7, of the Illinois Constitution provides, in relevant part, that "municipalities which are not home rule units shall have only powers granted them by law and the powers *** to provide by referendum for their officers, manner of selection and terms of office." Ill. Const. 1970, art. VII, § 7. It is equally clear that the basic sovereign power of the State resides in the legislature. Ill. Const. 1970, art. IV, § 1. The legislature may exercise all powers not forbidden by the state's constitution, delegated to another branch of government, or prohibited by the constitution of the United States. *Hader's Fire Proof Storage & Van Co. v. City of Chicago*, 235 Ill. 58, 69 (1908). The Illinois Constitution is not a grant of power to the legislature but only checks its power. *Client Follow-Up Co. v. Hynes*, 75 Ill. 2d 208, 215 (1979). The Illinois Constitution contains no constraint on the legislature's power to statutorily provide for the qualifications and terms of office for elected officials in a non-home-rule municipality such as the Village. In the exercise of its power, the legislature has provided that the chief executive officer of a village shall be a village president (who may also be called a mayor) with a four-

year term of office (see 65 ILCS 5/3.1-15-10 (West 2018)) and has established qualifications for holding an elective municipal office (see *id.* § 3.1-10-5).

¶ 15 Buchanan does not contest the legislature's power to establish qualifications for holding an elective municipal office or to provide for terms of office. She argues, however, that when the voters of a non-home-rule municipality such as the Village have exercised their constitutional right to provide by referendum the terms of office for its elected officials, the legislature "cannot go back in time to invalidate voter action" in that regard. As applied to the 2016 Referendum, Buchanan asserts that section 3.1-10-17 "nullifies the result of a valid election." We disagree.

¶ 16 Although the 2016 Referendum provides that no person shall be eligible to seek election to or hold the office of village president where that person has been previously elected to that office for two consecutive full four-year terms, the referendum is silent as to whether service as village president prior to the referendum's adoption is to be considered in the calculation of consecutive terms. Section 3.1-10-17(a) provides that the imposition of term limits must be prospective and elective office held prior to the effective date of any term limit imposed by a municipality shall not prohibit a person otherwise eligible from running for or holding elective office in that municipality. 65 ILCS 5/3.1-10-17(a) (West Supp. 2019). As the supreme court determined in *Burns*, by enacting section 3.1-10-17, the legislature demonstrated its intent that any term-limit referendum adopted on or after November 8, 2016, must be applied prospectively because only terms served after the passage of the referendum may be considered to determine a candidate's eligibility. *Burns*, 2020 IL 125714, ¶ 21. Section 3.1-10-17(a) merely places a limitation on the manner in which term limits are calculated in elections taking place subsequent to July 19, 2019, the effective date of the statute. *Id.* Contrary to Buchanan's assertion, application of section 3.1-10-17(a) to the 2016 Referendum does not invalidate voter action or nullify the result of a valid election. The statute does not act to repeal or invalidate the 2016 Referendum. We find that section 3.1-10-17 is the legislature's exercise of its concurrent power to set terms of office for elected municipal officers by regulating the manner in which their term-limits set by referendum or ordinance are to be calculated prospectively.

¶ 17 Based upon the foregoing analysis, we hold that section 3.1-10-17 of the Illinois Municipal Code is not unconstitutional as applied to the 2016 Referendum and affirm the judgment of the circuit court.

¶ 18 Affirmed.