2022 IL App (1st) 220898

FIFTH DIVISION
October 6, 2022

No. 1-22-0898

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MAYOR TIFFANY HENYARD, Individually and in Her Official Capacity, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22 CH 3835 |
| THE MUNICIPAL OFFICERS OF THE VILLAGE OF DOLTON, ILLINOIS; ED STEAVE, JASON HOUSE, BRITTNEY NORWOOD; KIANA BELCHER; TAMMY BROWN, and ANDREW HOLMES, in Their Official Capacities as Village Trustees; and KAREN YARBROUGH, in Her Official Capacity as Cook County Clerk, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | Honorable Paul Karkula, Judge, Presiding. |
| (The Municipal Officers Village of Dolton, Illinois, and Ed Steave, Jason House, Brittney Norwood, Kiana Belcher, Tammy Brown, and Andrew Holmes, in Their Official Capacities as Village Trustees, Defendants-Appellants; | ) ) ) ) ) ) | |
| Karen Yarbrough, in Her Official Capacity as Cook County Clerk, Defendant-Appellee). | ) ) | |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

No. 1-22-0898

¶ 1    This case presents issues of first impression regarding whether and how Illinois voters can recall their elected municipal officials. A village board adopted resolutions placing referenda on the ballot to establish a recall procedure, and to recall the incumbent mayor. On the eve of the election, the circuit court held that the referenda were invalid. The circuit court's order was stayed, the election proceeded, and the village's voters approved both referenda. This court stayed certification of the results pending our plenary review of the complex issues presented. Upon that review, we affirm the circuit court's judgment and conclude that both referenda were improperly drafted and therefore ineffective. We enter a permanent injunction against the certification of the referenda results.

¶ 2                                    BACKGROUND

¶ 3    Plaintiff-appellee Tiffany Henyard was elected as village president (mayor) of the Village of Dolton at the 2021 Consolidated Election.[1] The six defendants-appellants, Kiana Belcher, Jason House, Brittney Norwood, Ed Steave, Tammy Brown, and Andrew Holmes (village trustees), currently comprise the village board of trustees. At a special meeting on December 8, 2021, the village board placed the two referenda at issue herein on the June 28, 2022, general primary election ballot. The record does not contain copies of signed or numbered resolutions placing the referenda on the ballot, only unsigned ones, but the parties do not dispute their content.

¶ 4    The first referendum question read:

        "Shall the following recall mechanism be adopted and

        effective immediately, upon certification by the County Clerk, for

        the Village of Dolton?:

_____

[1]Section 3.1-15-10 of the Illinois Municipal Code (65 ILCS 5/3.1-15-10 (West 2020)) provides as follows: "The chief executive officer of a village shall be a village president, who may also be called a mayor." We will follow the nomenclature of the complaint and refer to Henyard as "mayor."

2

Recall of the Village President (Mayor)[.] Recall of the Village President (Mayor) of the Village of Dolton is established, applicable to, and effective as of the certification of results of the June 28, 2022[,] General Primary Election. 'Recall' shall mean the power of the electorate of the Village of Dolton to remove the Village President (Mayor) from office, and to immediately create a vacancy in the office of the Village President (Mayor) to be filled in the manner provided by law for filling such vacancy, by a majority vote of those voting on a question of whether to recall and remove the Village President (Mayor) of the Village of Dolton at a regularly scheduled election. Said question of whether to recall and remove the Village President (Mayor) of the Village of Dolton may be submitted either by resolution of the Dolton Corporate Authorities or by petition in the manner prescribed by law for the submission of public questions."

¶ 5    The second referendum question read: "If the recall mechanism is passed by a majority of voters at the June 28, 2022[,] General Primary Election, shall Tiffany A. Henyard be recalled and removed from the office of Village President (Mayor) of the Village of Dolton, effective upon certification of the election results by the Cook County Clerk?"

¶ 6    On April 25, 2022, Henyard filed a two-count complaint in the circuit court of Cook County. In count I, she sought a declaratory judgment that both referenda were invalid for

numerous reasons. In count II, she sought a declaratory judgment "denying the constitutionality of" the referenda because any recall of a specific official would "have to wait" until after the village board placed a recall mechanism on the ballot for voter approval and that the two referenda "cannot coexist on a single ballot." In particular, she argued that the language of the first referendum specifically limited the ability of voters to recall an official to some point *after* the certification of the results of the June 2022 general primary election. She contended that the second referendum specifically recalling Henyard was invalid because it was presented simultaneously with the first and it was therefore conducted *before* the certification of that election.

¶ 7    Henyard sought an order requiring the village clerk to not certify the referenda to the Cook County Clerk and, if the village clerk had already done so, to direct the Cook County Clerk to "de-certify" the referenda and "not place them on the ballot."

¶ 8    Henyard then moved for injunctive relief and an expedited schedule. Attached to her verified motion were copies of two village board resolutions placing the referenda on the general primary election ballot. On May 17, 2022, without notice to the defendants, the circuit court granted a temporary restraining order prohibiting the village clerk and county clerk from certifying the referenda questions and printing the questions on the ballot for the subject election and continuing the matter to a short date for status. The order recited that Henyard would likely suffer irreparable injury if the temporary restraining order were not granted.

¶ 9    On May 19, the village trustees filed a verified motion in opposition to Henyard's injunction motion, arguing that relief was barred by *laches* and because it was an "improper attempt to interfere with the legislative process." The trustees indicated that Henyard had not vetoed the resolutions within the normal time frame for doing so, and she had waited several

months before suing to overturn the referenda. They also argued that the matter was not yet ripe for adjudication because the referenda had not yet been approved.

¶ 10    On the same day, the circuit court stayed the May 17 temporary restraining order and set a schedule for further briefing.

¶ 11    On June 15, the circuit court heard oral arguments on the legal issues presented in the parties' extensive briefing on Henyard's motion. The court began its ruling by stating as follows:

> "[T]he only issue we're here on today is *** whether the stay should
>
> be lifted or remain in effect. *** The only reason I entered the TRO
>
> is because all I did was hear from one side at the beginning of the
>
> case. *** Now, when everyone else appeared *** I had no doubt in
>
> my mind that I was going to stay the TRO because I want to hear
>
> from both sides. *** I mean, this is just—just absolutely dead wrong
>
> to have those two items as referenda on the ballot. Completely.
>
> Completely. This will cause a grave irreparable harm and injustice
>
> to not only the incumbent mayor but more importantly to the citizens
>
> of Dolton themselves."

The assistant state's attorney representing the Cook County Clerk interrupted, noting that the office took no position on the merits but that early voting had started two days earlier and that "suppression of results would be the appropriate remedy."

¶ 12    The court further indicated that (1) the stay of the temporary restraining order was lifted, (2) it was "denying" the trustees' "motion" in opposition to the temporary restraining order, (3) it was "declaring that both of the provisions on the referendum [*sic*] are null and void and the votes not be tallied and the results suppressed," and (4) the county clerk should undertake "reasonable

5

efforts" to notify voters of the court's action. The court requested that the parties prepare a written order for its consideration and approval.

¶ 13    On June 21, defendants moved to stay the circuit court's June 15 order pending appeal. The court denied that motion.

¶ 14    On June 22, the circuit court entered a written order, apparently pursuant to its June 15 oral order: (1) lifting the stay of the May 17 temporary restraining order, "subject to modification by this order"; (2) declaring both referenda "null and void"; (3) directing the Cook County Clerk to not tally and to suppress any votes cast on the referenda; (4) directing the Cook County Clerk to "use reasonable efforts to try to notify the electorate" of the court's order; and (5) reciting that "This is a final and appealable order." Despite finding that the order was "final and appealable," the order did not contain the full required finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just cause to delay enforcement or appeal of the order. The June 22 order bore address blocks for counsel for both Henyard and the trustees, thus indicating that it was drafted by counsel, not by the court, and that both sides had agreed to its form.

¶ 15    On June 22, the village trustees filed a notice of appeal, invoking Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), Rule 303 (eff. July 1, 2017), and Rule 311(b) (eff. July 1, 2018) as the bases for jurisdiction. The notice specifically stated, among other things, that "the matter had not been fully briefed on the merits and was not set for final decision when the Circuit Court entered its order."

¶ 16    On June 24, this court (1) granted the defendants' motion for an accelerated docket pursuant to Illinois Supreme Court Rule 311(b) (eff. July 1, 2018); (2) without addressing the likelihood of success on the merits, found that the voting that was underway should not be further disrupted, given the proximity of the June 28 election; (3) directed the Cook County Clerk to

conduct the referenda elections, "including counting all votes cast, and releasing interim, unofficial, and final official tallies in the normal and customary manner"; and (4) prohibited the county clerk from canvassing the votes cast on, or proclaiming the results of, the referenda pending further order of this court. This court further directed that "[i]f the released vote totals show[ed] that the voters have approved either referendum, that approval will have no force or effect until further order of court." Additionally, this court directed the state's attorney of Cook County, as counsel for the county clerk, to file a status report after all votes had been counted, indicating the results thereof. The state's attorney later reported to this court that both referenda were approved by margins of about 400 votes and that no voters were deprived of the opportunity to vote on the referenda because of the circuit court's stay order.

¶ 17                                    ANALYSIS

¶ 18    On appeal, the village trustees assert the following contentions of error: (1) Henyard's claim is barred by *laches*; (2) the first referendum was a valid exercise of the village's home rule powers under section 6(f) of article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(f)), "where the question involves the terms and manner of selection of municipal officers and is submitted to the voters for their prior approval"; and (3) the second referendum was properly considered by the voters at the same election as the first referendum because it "was explicitly contingent upon the passage of" the first referendum.

¶ 19    We first address jurisdiction. A reviewing court has an independent duty to consider its own jurisdiction, whether or not the parties have raised it as an issue, before proceeding to the merits of the case. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) (citing *People v. Smith,* 228 Ill. 2d 95, 106 (2008), and *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)).

7

¶ 20     The trustees' notice of appeal indicates that their appeal is grounded in Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), Rule 303 (eff. July 1, 2017), and Rule 311(b) (eff. July 1, 2018). Rule 301 indicates that appeal from a "final judgment of a circuit court in a civil case" is appealable as a matter of right (Ill. S. Ct. R. 301 (eff. Feb. 1, 1994)), and Rule 303 provides that a notice of appeal of a final judgment must be filed, as it was here, within 30 days of the order (Ill. S. Ct. R. 303 (eff. July 1, 2017)). Rule 311(b) provides that this court may, in its discretion, order an expedited schedule on certain cases, but it does not provide an independent basis for appealing any particular type of circuit court order. Ill. S. Ct. R. 311(b) (eff. July 1, 2018). Therefore, the reference to Rule 311 in the notice of appeal was improper and does not provide any independent basis for this court's jurisdiction.

¶ 21     We next examine whether the court's June 22 order was a "final order" within the meaning of Rule 301. A final judgment fixes absolutely and finally the rights of the parties in the lawsuit; it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 232-33 (2005). Except as specifically provided by the Illinois Supreme Court rules, this court does not have jurisdiction to review judgments or orders that are not final. *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 210 (1994).

¶ 22     The July 22 order, drafted by counsel for both main parties, confusingly *lifted* the court's earlier stay of its temporary restraining order (thus reinstating an order against the county clerk from conducting the election on the referenda) but then, in the same breath, imposed an injunction against the county clerk, accomplishing the very same thing.

¶ 23     Normally, an injunctive order is appealable as a matter of right under Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017). However, the order goes further than merely enjoining the

8

referenda *pendente lite.* The order resolves the entire case on the merits. It specifically states: "Both referenda *** are hereby declared null and void." The order implemented this finding by enjoining from tallying any votes cast on the referenda and suppressing the results thereon. The court found that its order was "final and appealable"[2] and that the case was "off call." By so holding, the circuit court granted all the relief requested by Henyard, effectively terminating the case with a final order appealable pursuant to Rule 303. Therefore, we have jurisdiction under Rule 303.

¶ 24    The circuit court's finding that the referenda were "null and void" necessarily causes us to examine *how* the circuit court procedurally reached that result and terminated the case in favor of Henyard. When the circuit court entered its final July 22 order in favor of plaintiff Henyard, the case was only a few weeks old, and defendants had not yet had the opportunity to answer or plead to the complaint as provided by section 2-602 of the Code of Civil Procedure (Code) (735 ILCS 5/2-602 (West 2020)) or to move to dismiss it under section 2-615 or 2-619 of the Code (*id.* §§ 2-615, 2-619).

¶ 25    We have grave concerns about leapfrogging from considering a temporary restraining order to entering a final judgment in favor of a plaintiff without providing the parties the opportunity to proceed along the normal route of filing a responsive pleading and then resolving the case without a trial or a dispositional motion, such as a motion for summary judgment or for judgment on the pleadings. No matter how great the need for quick resolution of an election case, expediting does

---

[2]This finding was doubly flawed. Presumably, the drafters of the order intended to invoke Rule 304(a) (Ill. Sup. Ct. R. 304(a) (eff. Mar. 8, 2016)), which allows for appeal of certain interlocutory orders. Rule 304(a) provides that, "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." *Id.* First and foremost, since the order disposed of all issues in the case and was therefore appealable under Rule 303, any language that the order was "final and appealable" was gratuitous. Second, a circuit court order, such as the one at issue here, which does also not contain a specific written finding that there is "no just reason for delaying either enforcement or appeal" (*id.*), is *not* appealable under Rule 304(a). See *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 544 (2011).

not excuse applying the Illinois Supreme Court rules and Code of Civil Procedure that always govern in civil litigation. We have even graver concerns that no party—Henyard, the village trustees, or the state's attorney's office representing the Cook County Clerk—brought this problem to the attention of the circuit court by speaking up during the court's oral ruling or by filing a motion to reconsider raising that issue.

¶ 26    Nothing in the record shows that the parties specifically stipulated to converting the briefing on the temporary restraining order into that of a dispositive motion. In this court, the trustees criticize the circuit court for resolving the case when merely considering preliminary relief in the introductory "nature of the action" section of their brief, but they do not specifically raise the lack of a dispositive motion as a ground for reversal in the argument section of the brief. See *supra* ¶ 18.

¶ 27    We pressed the issue at oral argument, and both sides told us that they view the case as presenting merely legal issues that are ripe for resolution on the record now before us. In fact, after almost of hour of pointed questions about the manner in which the case was litigated below and inquiries about the possibility of simply vacating the circuit court's order to allow the case to proceed in a more normal procedural manner, counsel for the trustees stated, "I desperately do not want this case to go back, because it will cause undue delay in the functioning of government either way and which is why our brief is so extensive, to make sure that this panel had all the legal criteria to make this decision."

¶ 28    Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) provides that an appellant's brief must contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Furthermore, if a point is not argued, it is forfeited and cannot be raised in a reply brief, oral argument, or petition for rehearing. *Id.*

Accordingly, the trustees have forfeited any argument regarding the procedural error below, and we accept the concession made by their counsel at oral argument. See *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010) (failure to argue a point in the appellant's opening brief results in forfeiture of the issue).

¶ 29     This case presents only legal issues which the parties have thoroughly briefed and framed for our review. The briefing below was the functional equivalent of briefing on a motion for judgment on the pleadings, and we will review the circuit court's judgment under that rubric. *See In re Marriage of Shulga*, 2019 IL App (1st) 182028, ¶ 21. By doing so, we recognize that public interests are at stake, and a prompt answer to the questions presented is required. We do not wish, however, to sanction the imprudent practice of ignoring the Code of Civil Procedure and Illinois Supreme Court rules in expedited election cases, but we merely do so under the facts of this case and because of the apparent forfeiture and/or consent of the parties.

¶ 30     "Judgment on the pleadings is properly granted if the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). Our review is *de novo*. *Id.*

¶ 31     We first address the trustees' contention that Henyard's claim is barred by *laches.* Although the trustees did not plead it as such in the circuit court, *laches* is an affirmative defense. The trustees contend that Henyard waited four months to sue after the resolutions were adopted, which they assert was too long.

¶ 32     Whether *laches* bars a claim depends on the facts and circumstances of each case. *Tillman v. Pritzker*, 2021 IL 126387, ¶ 25 (citing *La Salle National Bank v. Dubin Residential Communities Corp.*, 337 Ill. App. 3d 345, 351 (2003)). A valid *laches* defense requires, among other things, a finding that the opposing party was prejudiced by the plaintiff's delay in bringing her claim. *Id.*

(citing *Van Milligan v. Board of Fire & Police Commissioners of the Village of Glenview*, 158 Ill. 2d 85, 89 (1994)). Additionally, *laches* is almost impossible to successfully assert against a public entity, such as a mayor or county clerk. As our supreme court has explained, "It is, of course, elementary that ordinary limitations statutes and principles of *laches* and estoppel do not apply to public bodies under usual circumstances ***." *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 447 (1966) (citing 19 Am. Jur. *Estoppel* § 166 (1939); 31 C.J.S. *Estoppel* § 138 (1964); P.H. Vartanian, Comment Note, *Applicability of Doctrine of Estoppel Against Government and Its Governmental Agencies*, 1 A.L.R.2d 338, 340 (1948)).

¶ 33    The trustees' *laches* defense relies strongly on the fact that Henyard did not veto the resolutions placing the referenda on the ballot. This argument is without merit because Henyard had no power to veto the resolutions. Section 28-7 of the Election Code (10 ILCS 5/28-7 (West 2020)) allows a municipal board to place referenda to change the form of government on the ballot by a mere resolution, as was done here, rather than by ordinance. Under the Illinois Municipal Code, a village mayor can veto an ordinance, but she cannot veto resolutions that, like the ones at issue here, do not expend public funds. See 65 ILCS 5/6-4-2 (West 2020).

¶ 34    We therefore reject the trustees' claim that *laches* bars Henyard's attack on the two referenda.

¶ 35    That brings us to the merits of the attacks on the two referenda. The Village of Dolton is a home rule unit of government. Ill. Sec'y of State, Illinois Counties and Incorporated Municipalities 29 (July 2012), https://www.ilsos.gov/publications/pdf_publications/ipub11.pdf [https://perma.cc/A62F-Z9FB]. Our supreme court has explained: "[m]unicipal governments, whether home rule or non-home-rule, are creatures of the Illinois Constitution. [Citation.] They have no other powers." *American Telephone & Telegraph Co. v. Village of Arlington Heights*, 156 Ill. 2d 399, 414 (1993).

Article VII, section 6(f), of the Illinois Constitution addresses how voters of a home rule unit may change their form of government by referendum. It states:

> "(f) A home rule unit shall have the power subject to approval by referendum to adopt, alter or repeal a form of government provided by law, except that the form of government of Cook County shall be subject to the provisions of Section 3 of this Article. A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law." Ill. Const. 1970, art. VII, § 6(f).

¶ 36 The trustees devote a good part of their brief to the facially appealing argument that the referenda must be upheld simply because the voters are sovereign and upholding the referenda will vindicate the manifest will of the voters in Dolton. In this argument, they rely on statements made by our supreme court and this court that extol the value of ballot access and the need to recognize the rights of voters to select candidates of their choice to lead their communities. These values are of paramount importance, and nothing in this opinion is intended to denigrate them. However, simply reciting these values does not resolve the unique and unprecedented questions before us. It also fails to recognize that sovereign authority to alter the form of local governments is jointly held by *both* the voters *and* the General Assembly. Even *after* voters approve a referendum to change a form of government, the General Assembly may reverse that action, even to the extent of making the change retroactive. *Buchanan v. Jones*, 2021 IL App (1st) 210169, ¶ 16 (upholding a state law that limited a referendum-approved local term limit system because the General Assembly had exercised its "concurrent power to set terms of office for elected municipal officers").

13

¶ 37    In our nation, each state has the authority to establish the manner of selection of its own officials, subject to limitations imposed by Congress. In states such as California, state constitutions and/or statutes specifically provide for midterm recall elections of public officials. See, *e.g.*, Cal. Elec. Code § 11006 (West 2020). Indeed, California is noteworthy for its frequent attempts to recall public officials. See *Recall History in California (1913 to Present)*, Cal. Sec'y of State, https://www.sos.ca.gov/elections/recalls/recall-history-california-1913-present (last visited Sept. 24, 2022) [https://perma.cc/9HH7-BQ3Q] (noting 179 recall attempts in California to recall state officials since 1913). California allows midterm recall of local officials, as well. See Shane Goldmacher, *Progressive Backlash in California Fuels Democratic Debate Over Crime*, N.Y. Times (June 8, 2022), https://www.nytimes.com/2022/06/08/us/politics/california-voters-democrats-crime.html [https://perma.cc/Z3VD-2ARA] (recall of San Francisco District Attorney).

¶ 38    The leading scholar on the 1970 Illinois Constitution, Professor Ann Lousin, has commented that "[c]ourts have not interpreted [section 6(f)] broadly." Ann M. Lousin, The Illinois State Constitution: A Reference Guide 177 (2010). That is an understatement. Illinois most assuredly does *not* share California's hospitality for recall elections. The voters of Dolton, Chicago, or even tiny Bone Gap, Illinois (see generally, Joan G. Anderson & Ann Lousin, *From Bone Gap to Chicago: A History of the Local Government Article of the 1970 Illinois Constitution*, 9 J. Marshall J. Prac. & Proc. 697 (1976)), have no express constitutional or statutory authority to recall any public official midterm, except the Governor (see Ill. Const. 1970, art. III, § 7). In fact, history gives us virtually no example of any public official in Illinois ever being recalled midterm by a referendum vote—regardless of whether the recall mechanism was in place before the officer's term began. In the absence of a state law permitting recall, any local recall process must therefore be created by a tailor-made section 6(f) referendum in the subject jurisdiction.

¶ 39    Since the state constitution was enacted in 1970, citizens have made efforts to modify the form of their local governments under section 6(f), and that section has been the subject of considerable litigation. Courts have, for instance, upheld referenda to establish term limits of municipal officials against a variety of challenges. See, *e.g.*, *Johnson v. Ames*, 2016 IL 121563; *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village*, 2020 IL 125714; *Jones v. City of Calumet City*, 2017 IL App (1st) 170236. Courts have also upheld modifications such as changing the position of village clerk from an elected to an appointed office and increasing the number of village trustees (*Clarke v. Village of Arlington Heights*, 57 Ill. 2d 50 (1974)).

¶ 40    However, our supreme court has struck down many referenda to change the form of local governments. Beginning with the seminal case of *Leck v. Michaelson*, 111 Ill. 2d 523 (1986), these cases have declared the principle that a law made by voters—that is, the referendum-based change in government—must be drafted with the same level of precision and clarity as a state law. More specifically, a section 6(f) referendum must be able to stand on its own terms and may not be vague and ambiguous regarding the information needed for its implementation and enforcement. *Id.* at 530-31.

¶ 41    In striking down an attempt to establish non-partisan elections in Chicago, the court in *Lipinski v. Chicago Board of Election Commissioners*, 114 Ill. 2d 95, 99-100, 106 (1986), explained:

> "The holding of *Leck* is clear[.] A referendum submitted under the provisions of article VII, section 6(f), must be able to 'stand on its own terms'; if the referendum submitted to voters is not self-executing—leaving gaps to be filled by either the legislature or municipal body—then '[j]ust what was approved by the voters [in the referendum proposition] is uncertain.' "

¶ 42    More recently, this court invalidated a referendum to allow municipal voters to enact city ordinances by initiative and referendum, holding that moving legislative power from the city council to the voters in that manner was not a "change in the form of government" under section 6(f). *Harned v. Evanston Municipal Officers Electoral Board*, 2020 IL App (1st) 200314, ¶¶ 39, 45.

¶ 43    Case authority regarding recall elections in Illinois is sparse. About 40 years ago, this court invalidated a proposed referendum to establish a recall process for municipal officials in the non-home-rule Village of Northlake. *Williamson v. Doyle*, 103 Ill. App. 3d 770 (1981). This court addressed, for the first time, the basic question of whether any recall procedure could be implemented through a section 7(3) "change in the form of government" referendum. See Ill. Const. 1970, art. VII, § 7(3) (section 7(3) is the non-home-rule version of section 6(f)). This court answered the question in the negative, explaining:

>     "We believe that if the drafters of the 1970 Illinois Constitution had intended to include the recall power in section 7(3), they would have done so explicitly. The word 'recall' does not appear in the 1970 Constitution. Our research reveals only one reference to recall in the Record of Proceedings of the Sixth Illinois Constitutional Convention. Member Proposal No. 224, offered by four delegates, recommended that the Constitution include provisions for, *inter alia*, recall of elected officers. (7 Proceedings 2937.) This recommendation was not acted upon. Nevertheless, it is apparent that the drafters were aware of the concept. This leads us to believe

that the omission was not an oversight." *Williamson*, 103 Ill. App. 3d at 772.

¶ 44 The *Williamson* court concluded that recalling officials midterm was a form of " 'de-selection' " of officials and therefore did not fit within the term "selection" used in section 7(3). *Id.* After noting that the powers of home-rule and non-home-rule municipalities were identical as to the issue presented, the *Williamson* court held that the state constitution "does not authorize the use of a referendum to establish a procedure for recall of elected officials." *Id.* at 773.

¶ 45 Six years ago, however, this court revisited the *Williamson* holding in light of the supreme court's later holding in *Leck*. This court was called upon to review the validity of an ordinance in, ironically, the Village of Dolton, whose village board adopted an ordinance establishing a procedure for a voter initiative to place a referendum on the ballot to recall a municipal official. *Henyard v. Village of Dolton*, 2016 IL App (1st) 153374. Unlike the referenda at issue here, the ordinance challenged in *Henyard* was never placed on the ballot for referendum approval under section 6(f).

¶ 46 When this court considered *Henyard*, Henyard herself was not the mayor, but a village trustee. She had voted against the ordinance, and she was the lead plaintiff in the case. *Id.* ¶ 1. Among other things, she argued that *Williamson* governed and that the ordinance was invalid because a recall of a municipal official was not a change in the form of government under section 6(f). The *Henyard* court declined to be bound by *Williamson*. It extensively analyzed *Williamson* and *Leck*, but declined to invalidate the recall ordinance on the basis asserted in *Williamson*. See *Id.* ¶¶ 23-24. Nonetheless, the *Henyard* court still invalidated the recall ordinance, because, although it created a change in the form of Dolton's government, it had not been presented to the voters for approval by referendum as required by section 6(f). The *Henyard* court stated:

17

"Consequently, *prior approval through a referendum of the recall procedure specified in the ordinance was required* and absent that referendum approval, the ordinance is invalid." (Emphasis added.) *Id.* ¶ 25.

¶ 47    Against this legal background, we must determine whether the first referendum was valid under the precedents from our supreme court interpreting section 6(f). Henyard presents a host of arguments challenging the validity of the first referendum.

¶ 48    Henyard first presents a multiprong argument that is largely grounded in the fact that the first referendum was placed on the ballot in tandem with the second. She contends that (1) placing both referenda on the ballot together improperly "skewed" the results; (2) some voters might have abstained from voting on the first referendum but nonetheless voted on the second referendum to recall Henyard because they were "prejudiced" by seeing the two referenda side by side on the ballot; and (3) if the first referendum failed but the second did not (which we now know did not occur), "confusion" would ensue. She does not support these arguments with valid citations to precedent, and we find them to lack merit because they rely on conjecture and speculation. A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Illinois Supreme Court Rule 341(h)(7), (i) (eff. Oct. 1, 2020). See *Vancura*, 238 Ill. 2d at 370.

¶ 49    Henyard also argues, however, that the wording of the first referendum is vague and ambiguous under *Leck*. She takes issue with the wording of the first referendum in the following respects: (1) it states that the recall mechanism is not effective until "certification by the County Clerk, for the Village of Dolton"; (2) it states that it operates "to immediately create a vacancy in the office of Village President (Mayor)," suggesting that approval of the first referendum itself would recall the incumbent, Henyard, rather than merely establish a system for recalling officials

generally; (3) "the final sentence provides that the recall power is prospective and contingent upon future events because a recall referendum, 'may be submitted either by resolution of the Dolton corporate authorities or by petition,' " suggesting that it "may, or may not, be submitted to the electorate under the wording of this referendum, but logically per the last sentence it would occur at a future point in time, not immediately"; (4) it violates Henyard's right to equal protection because it only allows the recall of a mayor and not of a trustee; and (5) it is silent as to how a recalled mayor would be replaced, and since the village board has the authority to fill vacancies in the office of mayor by law (65 ILCS 5/3.1-10-50(f)(1) (West 2020)), and the referendum does not disclose that fact to the voters, it has unfilled gaps that render it invalid under *Leck*.

¶ 50    We find this argument dispositive. The trustees were clearly determined to use their authority to remove Henyard from office immediately regardless of the fact that Illinois law does not provide for recall of village officials and the fact that the village had not previously adopted a recall mechanism by referendum. The verbal gymnastics necessary to draft the two referenda in a way that would allow Henyard to be removed midterm resulted in an enormously convoluted, confusing, and ambiguous question, which clearly violates the clarity and precision requirements that our supreme court set forth in *Leck* and *Lipinski*.

¶ 51    In particular, the phrase

> "and to immediately create a vacancy in the office of the Village President (Mayor) to be filled in the manner provided by law for filling such vacancy, by a majority vote of those voting on a question of whether to recall and remove the Village President (Mayor) of the Village of Dolton at a regularly scheduled election"

can easily be read in two different ways. Under Illinois law, a midterm vacancy in the office of mayor is not immediately filled by the voters but is filled by the village board electing one of its

19

own members as "acting" mayor. *Id.* Under one reading of the first referendum, a vacancy in the position of a recalled mayor would be filled by a majority of the *voters*, not by the village board as provided by law. This reading is not merely viable, but fairly well suggested by the immediate adjacency of the clause containing the verbal phrase "to be filled" to the prepositional phrase reading "by a majority vote of those voting on a question of whether to recall and remove the Village President (Mayor) of the Village of Dolton at a regularly scheduled election." This suggests that that the new mayor is "filled" by the voters—not the board—selecting someone to be the new mayor. The second reading, the one the drafters apparently intended, is that the words "by a majority vote" explain that the first referendum would be approved by a majority vote of the voters who wished to establish a recall mechanism. However, that reading is a bit strained because the phrase beginning with "by a majority vote" simply hangs by itself in the middle of a complex compound sentence with no apparent antecedent.

¶ 52     The first referendum also provides that a referendum to recall the mayor may be placed on the ballot by "resolution of the Dolton corporate authorities" or by voter petition. The referendum's use of the term "corporate authorities" is problematic. Under Illinois law, the corporate authorities of a village are the trustees *and* the village president (mayor). *Id.* § 1-1-2(2). As explained above, a village board may adopt a resolution placing a binding section 6(f) referendum on the ballot by its own action without any involvement of the mayor, and the mayor cannot veto that resolution. See *supra* ¶ 33. Therefore, the reference to a "resolution of the Dolton corporate authorities" is confusing and ambiguous.

¶ 53     Therefore, we find that the referendum is fatally vague and ambiguous under the doctrines enunciated by our supreme court in *Leck* and *Lipinski.* This holding makes it unnecessary for us to address the *Williamson* court's determination that, because recall is not a change in the manner of

20

"selection" of municipal officers as provided therein, voters can never establish a recall mechanism by referendum under Article VII of the 1970 Illinois constitution,.

¶ 54    Our disposition of the claims regarding the first referendum perforce invalidates the second referendum. Nonetheless, since this is a case of first impression, involves the public interest, and is likely to be reviewed on further appeal, we will address and resolve the separate argument that Henyard makes against the second referendum. The second referendum specifically named Henyard and was made contingent on the successful adoption of the first referendum at the same election. Henyard argues that since there was no established recall procedure in place in Dolton when the voters voted to recall her, that vote was invalid under *Henyard*.

¶ 55    The trustees contend that they complied with *Henyard* because they placed both a recall mechanism and a specific recall of Henyard on the ballot for referendum approval. They strongly emphasize the sequence of the referenda, where the recall mechanism was placed first on the ballot, so that the voters "approved" it in a queue of sorts, before the vote was taken to specifically recall Henyard herself. They also contend that the language of the second referendum specifically makes any recall of Henyard contingent on the first referendum being adopted. But the form of government in effect at moment when the votes were *cast* is key.

¶ 56    Section 6(f) provides that the village has the "power to provide for its officers, their manner of selection and terms of office only as *approved* by referendum or as otherwise authorized by law." (Emphasis added.) Ill. Const. 1970, art. VII, § 6(f). The constitution's use of the past tense verb "approved" is crucial and dispositive. Both referenda were on the same ballot at the same election. Accordingly, when the voters voted to recall Henyard on June 28, 2022, they were voting upon a nullity because, when they voted, there was no *approved* procedure in place allowing any Dolton official to be recalled, and there would be no procedure in place until the Cook County

21

Clerk was due to certify the results of the first referendum several weeks after the election. See 10 ILCS 5/1-8, 22-17 (West 2020). Only when that canvass was complete would there be a "law" in Dolton allowing for recall of village officials. As the *Williamson* court aptly stated, "The fact that a result might be reached by a circuitous route does not mean that the straight path to that end is a legal one." *Williamson*, 103 Ill. App. 3d at 773.

¶ 57    We find the *Henyard* court's analysis to be sound, and we follow it here. Because the second referendum specifically recalling Henyard was not already in force on June 28, 2022, pursuant to prior approval of a valid section 6(f) referendum, the second referendum was invalid.

¶ 58                                          CONCLUSION

¶ 59    In sum, we find that both referenda were invalid under section 6(f) of the Illinois Constitution. We therefore affirm the circuit court's judgment that the referenda were null and void. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we enter a permanent injunction against the Cook County Clerk from canvassing or proclaiming the results of the referenda elections.

¶ 60    Affirmed; injunction entered.

*Henyard v. Municipal Officers of Dolton*, 2022 IL App (1st) 220898

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-3835; the Hon. Paul Karkula, Judge, presiding. |

| | |
|---|---|
| **Attorneys for Appellant:** | Burton S. Odelson, Ross D. Secler, and Jayman A. Avery III, of Odelson, Sterk, Murphey, Frazier & McGrath, Ltd., of Evergreen Park, and Thomas A. Jaconetty, of Chicago, for appellants. |

| | |
|---|---|
| **Attorneys for Appellee:** | Robert W. Fioretti and Edward E. Campbell, of Fioretti Campbell Law LLC, and Michael J. Kasper, both of Chicago, for appellee Tiffany Henyard. |
| | No brief filed for other appellees. |